| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN HAMILTON COUNTY |
| COUNTY OF HAMILTON | ) | SUPERIOR COURT DIV. # |
| | ) | |
| PLAINTIFFS | ) | |
| "BNT" | ) | 29 D 0 2   0 9 0 6   *CT 741* |
| | ) | |
| V. | ) | CASE # |
| DEFENDANTS | ) | |

Brian Hindson, Central Indiana Aquatics,
US Swimming, Indiana Swimming,
Westfield-Washington School Corporation,
Kokomo-Center School Corporation, Noblesville
School Corporation

Comes now the Plaintiff, BNT, by and through the undersigned attorney, Jonathan C. Little, Esq., and asks the court to grant the relief deemed necessary and proper with regards to the counts specified below.

Respectfully Submitted,

Jonathan C. Little
Attorney for Plaintiff
8902 Otis Ave Suite 201
Indianapolis, IN 46216
(812-320-3367)
IN Bar # 27421-49

## INTRODUCTION AND SUMMARY OF THE ACTION

1. This action for damages is brought by "BNT" ("plaintiff") one of the innumerable female swimmers violated by Brian Hindson, Central Indiana Aquatics, United States Swimming (USS), and the Kokomo, Westfield-Washington, and Noblesville School Corporations. These swimmers had their youth and innocence stolen in a manner that has resulted in permanent and public sexual exploitation on a global scale. For approximately ten (10) years all three school corporations, US Swimming and associated clubs Westfield Area Swimmers and Central Indiana Aquatics (CIA), through their negligence, recklessness, indifference and general lack of accountability, allowed defendant Brian Hindson to operate a child pornography factory on their premises and at athletic functions sanctioned by them. BNT and an indeterminable number of other females, as young as twelve will have to live with the evidence of this violation available to anyone, anywhere, in the world for eternity via the internet.

2. The individual Defendants named in this action include Brian Hindson, who as an agent, servant, employee, invitee, and/or representative of the named Defendants committed the violations of not only the young girls under Mr. Hindson's care, but of the sacred bond that exists between athlete and coach. Mr. Hindson pled guilty on October 17, 2008, to Federal criminal charges in the United States District Court for the Southern District of Indiana for producing, distributing and possessing child pornography (in violations of 18

US § 2251 (a), 18 US § 2252 (a)(2) and 18 US § 2252 (a) (4) (b) and on

10/17/2008 was sentenced to 400 months in Federal prison.

3. The individual Defendants in the suit are chiefly: (1) School Corporations

who due to inadequate policies and procedures failed to discover the

conditions, which existed on their premises for approximately a decade, that

led to the horrific, permanent exploitation of an indeterminable number of

young women, (2) Discovery will determine which individual district

employees, teachers, administrators, or coaches will be named at a later date

as individual defendants in this suit  (3) Mr. Hindson, personally  (4) US

Swimming (and its subsidiaries in Indiana) that endorsed and chartered

Central Indiana Aquatics, the swim club of which Mr. Hindson was President.

Parents had every reason to trust that their children would be safe on the

premises of any of the defendant school districts and the endorsement of the

club by US Swimming lent vital credibility to Central Indiana Aquatics and

Coach Hindson. The connection to US Swimming was the attraction to

Westfield Area Swimmers and Central Indiana Aquatics for swimmers of the

caliber of BNT to affiliate with the clubs. BNT was a multi-time All-

American swimmer at the University of Florida (UF) and Indiana University

(IU), as well as a two-time participant in the US Olympic Trials. Further she

was the Big Ten record holder in her signature event, the 400 meter individual

medley.

4. BNT, by virtue of her stellar swimming accomplishments has enjoyed a very

positive, public reputation both at home and abroad. Nowhere is that

reputation stronger than in her hometown of Kokomo, Indiana, where she was the school's first state champion and the Indiana High School Athletic Association Mental Attitude award winner. Consequently, all three school districts benefited from BNT training at their facilities, and US Swimming through its chartered clubs was able to benefit through its association with BNT, who attracted other swimmers from central Indiana to join the team and subsequently become paying members of US Swimming. All of the Defendants collectively, failed, not only every female taped and photographed by Mr. Hindson, they failed one of their greatest ambassadors of goodwill in the history of Indiana swimming. The result of that failure has led to the permanent public humiliation of a Central Indiana and Kokomo sporting legend.

5. Starting in the summer of 1999, BNT and her mother made a daily commute, often early in the morning and on Saturdays between Kokomo and Westfield High School. BNT, in search of better training partners and coaching in preparation for the 2000 Olympic Games, began swimming with L. B., another international caliber swimmer, who went on to a very successful career at Stanford. L. B. introduced BNT to Coach Hindson and Central Indiana Aquatics. As a result of Hindson's association with L.B., BNT joined Central Indiana Aquatics and began swimming for the team in August of 1999, before her senior year of high school. The partnership proved to be very successful for both swimmers, who received scholarships to Stanford and the

University of Florida (UF), respectively, following their senior years of high school.

6. Starting in August of 1999 Coach Hindson began video taping and photographing BNT, as a teenager, in the girls' locker room, coach's office and bathrooms of the Defendant School Districts. Mr. Hindson subsequently taped BNT as both a teenager and an adult when she returned home from college (both UF and IU) to train on her breaks from college in preparation for various US Championships.

7. Defendant School districts failed to supervise Mr. Hindson and Central Indiana Aquatics while the US Swimming chartered organization used their facilities. The school districts failed to discover hidden cameras, holes in shower walls, or doors opening from the male coaches' office into the female locker room, a vent in the same door that allowed for visual access into the female locker facility and a window which allowed unrestricted sightlines into the girls' locker room from the male coaches' office. Further, defendant school districts gave Coach Hindson, and apparently any invitee who rented the athletic facilities, keys to the girls' locker room allowing Hindson and the general community unrestricted, unregulated and unmonitored access and ability to violate the dignity of numerous females on their grounds.

8. The school districts, particularly Westfield, were aware and had notice of complaints regarding access to their female locker room facilities as evidenced by the 2005 re-design and renovation of the locker room facilities in response to those parental complaints.

9.  Noblesville High School and its "5/6" building both include aquatic facilities, which the school corporation; allowed Central Indiana Aquatics to use without supervision of any type. If the Noblesville Schools had done any sort of monitoring in their facility, perhaps the portion of this tragedy involving their facilities could have been avoided.

10. Kokomo High School was extremely negligent in failing to discover the painfully obvious conditions in their locker room facility, which allowed clear view into the female locker room from an office occupied by male coaches. School administrators knew or should have known of this obvious condition, which has existed at the school since it was built in 1968. School administrators did nothing to rectify this open and obvious condition that allowed for the invasion of privacy of numerous students on innumerable occasions.

11. Kokomo High School had no policy regarding whom or which groups received building keys or keys to sensitive building areas such as locker rooms. Kokomo High School handed out keys to its facilities, including the girls' locker room, with no policy in place to monitor the use and distribution of the keys and failed to follow their written policy when it existed.

12. The "Use of School Facilities Policy" which was in enacted on April 14, 2003 and was amended on February 12, 2008, immediately following Brian Hindson's arrest allows for recreational groups to use corporation facilities when groups request permission in writing. No use of school facilities policy was in effect when BNT graduated from Kokomo High School in 2000.  The

corporation failed to adhere to this policy with regards to Central Indiana Aquatics, as no written rental contracts/agreements between the school corporation and Central Indiana Aquatics exist. When Plaintiff returned to train on breaks from college after 2003, the Kokomo School Corporation failed to adhere to its own facility use policy with regards to practices at its facilities conducted by US Swimming Club- Central Indiana Aquatics coached by Brian Hindson. Kokomo's "Use of School Facilities Policy" fails to provide any type of supervision of outside groups. The absence of written records and supervision demonstrates that the Kokomo School Corporation recklessly and with indifference to the safety of the young women using their facilities had no knowledge of who was using their facilities or how those facilities were being used. (These failures are specifically addressed in the new district "Use of Corporation Facilities Policies" adopted 2/12/2008).

13. Due to their failure to perform inspections and failure to provide adequate site supervision all three school districts failed to discover cameras hidden in each of their locker rooms. This was not an isolated occurrence; Mr. Hindson's actions took place over approximately ten years. The sheer duration of the exploitations of young women committed by Mr. Hindson shows a complete lack of monitoring, supervision, or any level of diligence on the part of all three school districts. This reckless indifference for the safety of the young swimmers allowed Mr. Hindson the freedom to operate without the fear of being discovered.

14. The failure of all three school districts to discover the cameras hidden in lockers, holes, coaches' offices, closets etc., which existed at their facilities since at least 1998, demonstrates a policy of a lack of diligence and a lack of responsibility on the part of district officials.

15. All three school districts ignored numerous parental complaints concerning Coach Hindson and his relationships with his swimmers, which parents deemed to be manipulative and was often verbally abusive. Despite being aware of parental complaints concerning the unusual practice of girls changing in the coaches office rather than the locker room, Westfield did nothing to investigate the motives behind Mr. Hindson having the girls change in his office.

16. This case has generated a significant amount of media coverage in the state, in all media, including television. The identities of the victims, while officially classified as "Jane Doe's" in the Federal Governments child pornography case, are common knowledge in the state, particularly in small rural towns like Kokomo and in the national swimming community. BNT, is a current resident of Kokomo. While retired from swimming on the international and Olympic levels, BNT is still an active masters swimmer. In both of these small communities, members know that there are pornographic pictures of BNT available on the Internet. The US Attorney's office and the FBI have corroborated that nude images of BNT have been disseminated on the Internet. Due to this media exposure and knowledge that her peers and community know of the existence of these photographs, images and videos

BNT has experienced mental trauma that has affected all areas of her life. BNT will spend the remainder of her life with the fear that these pictures are out there and could surface at any time, potentially ruining her career, and, more importantly her reputation, both in the swimming community, her native Indiana and internationally.

## THE PARTIES

17. **Plaintiff**

    **a.**  BNT is a resident of the State of Indiana. She grew up in Indiana and graduated from Indiana University in 2004. She is a two-time Big Ten Champion and Former Big Ten Record Holder in the 400 meter individual medley. She is a multi-time NCAA All-American and swam in the 2000 and 2004 Olympic Trials in the 200 and 400 meter individual medleys.

18. **Defendants**

    **a.**  Brian Hindson.  As Founder, President and Head Coach of US Swimming sanctioned club Central Indiana Aquatics and its predecessor Westfield Area Swimmers, a Marion County based swim club. Mr. Hindson coached hundreds of young men and women since the late 1990's, until his arrest in February of 2008 for the sexual exploitation of an untold number of his athletes.

b.  Central Indiana Aquatics, LLC an elite private swim club sanctioned

by US Swimming and headquartered in Marion County until its

administrative dissolution in June of 2008. The club trained primarily

at Kokomo and Westfield High School since its inception. Its founder,

President and head coach was Brain Hindson.

c.  UNITED STATES SWIMMING (USS). US SWIMMING is the

national governing body of swimming in the United States. It is a

corporation based in Colorado Springs, CO. US Swimming oversees

swimming at all level in the United States, from the Olympic Trials to

youth and master swimming. USS endorses and charters swim clubs,

such as Central Indiana Aquatics, to promote swimming at the youth,

masters and grass roots levels all over the United States. As a benefit

and incentive for clubs to apply for recognition from USS, defendant

offers liability insurance coverage to its members.

d.  Indiana Swimming Incorporated- Brain Hindson was actively involved

with US Swimming and its subsidiary in Indiana, Indiana Swimming

Inc. a non profit Domestic Corporation with its registered address in

Marion County. Mr. Hindson was the groups communications director

in Indiana, where his duties included running the organizations

website. Mr. Hindson was fired from his position with USS and

Indiana Swimming, Inc. for unknown reasons. Mr. Hindson was also

the Indiana Swimming Corporation's Coaches' Representative to US

Swimming.

e.  Westfield- Washington School Corporation-An Indiana Public School
    Corporation located entirely in Hamilton County in the State of
    Indiana.

f.  Kokomo- Center Consolidated School Corporation- An Indiana Public
    School Corporation located entirely in Howard County in the State of
    Indiana.

g.  Noblesville School Corporation- An Indiana Public School
    Corporation located entirely in Hamilton County in the State of
    Indiana.


### Jurisdiction and Venue

19. This action for damages arises under the Constitution and laws of the United
    States as well as the law of the State of Indiana. There is no diversity of
    citizenship between the parties, with the exception of US Swimming.
    However, US Swimming has a strong presence in Indianapolis and the state of
    Indiana and could reasonably expect to be called into court in Indiana.

20. All of the Defendants are located in Howard, Hamilton, or Marion County and
    Indiana Trial Rule 75 (A) 1 indicates that the preferred venue is the county
    that is home to the majority of Defendants. Hamilton (Westfield-Washington
    School Corporation and Noblesville School Corporation) and Marion County
    (Indiana Swimming and Central Indiana Aquatics) each have two Defendants

with registered services addresses. Either Marion County or Hamilton County

is the appropriate venue for this litigation.

### Count One:

### FOURTH AMENDMENT VIOLATION: ILLEGAL SEARCH AND SEIZURE

21. BTN repeats all of the allegations from paragraphs 1- 20 above as set forth

    fully herein.

22. The Fourth Amendment prohibits government actors from conducting illegal

    searches and seizures and is applicable against the states through Due Process

    clause of the Fourteenth Amendment. A search is determined to have taken

    place when a person, depending on whether or not the "searched" person had

    a "constitutionally protected reasonable expectation of privacy." (*Doe v.*

    *Dearborn Public Schools and Gail Lynn Shenkman,* US Dist. Court E.D. of

    MI, Southern Div., 2008 U.S. Dist. LEXIS 25514, 27 I.E.R. Cas. (BNA) 904

    page 12, citing *Katz v. United States,* 389 U.S. 347 (1967)). The prohibition

    against unreasonable searches and seizures regulates the conduct of school

    officials and searches and seizures by government employees or supervisors

    of the private property of their employees are subject to the constraints of the

    Fourth Amendment.  The legality of the search is measured by balancing the

    expectation of privacy one has in the item being searched against societies'

    willingness to recognize that expectation as reasonable. It can be safely

    assumed that a person changing or showering in a public high school locker

room has a reasonable expectation of privacy; and that society would
recognize that expectation as reasonable.

23. A school corporation has a duty to protect it students and their reasonable
expectations of privacy in their own persons. Having school officials video
tape students and young people while showering and changing is an illegal
and unjustifiable breach of that duty. Mr. Hindson, as high school swim coach
and the adult in charge of the girls' locker room during swim practice,
violated BNT's and countless other young women's Fourth Amendment
rights. This illegal search directly damaged BNT's reputation and led to her
permanent global sexual exploitation via the Internet.

24. There exists no legal or logical basis, let alone school policy goal that can be
cited to validate Mr. Hindson's criminal actions with regards to BNT's fight
to be secure in her person while using Defendant's locker room facilities.

25. Mr. Hindson was an employee of the Kokomo-Center School Corporation in
2006 and 2007 when he taped Plaintiff using the school corporation's locker
room facilities, constituting a violation of her Fourth Amendment rights as
outlined above.

26. Discovery will determine if Mr. Hindson was an agent of the Noblesville
School Corporation in 1997, 1998 and 1999.

27. BNT recognizes that Mr. Hindson was never an employee of the Westfield-
Washington School Corporation. However, for the better part of a decade, Mr.
Hindson used the coach's office and girls' locker room at Westfield High
School to violate BNT's Fourth Amendment rights.

28. When acting as an agent of the Kokomo-Center School Corporation and perhaps the Noblesville School Corporation and an invitee of the Westfield-Washington School Mr. Hindson taped young women in various states of undress and subsequently transmitted these images to a global audience via the Internet.

## **Prayer For Relief**

29. BNT prays for the following relief:

    **a.** damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by and elevated by Defendants' negligent and harmful actions.

    **b.** damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes.

    **c.** Punitive damages;

    **d.** Attorney fees

    **e.** Consequential damages.

    **f.** Special damages

g. And amount of reasonable customary expenses and interest.

## Count Two:

**INDIVIDUAL LIABILITY FOR BRIAN HINDSON AND UNKNOWN ADMINISTRATORS AND SCHOOL OFFICIALS OF THE KOKOMO-CENTER SCHOOL CORPORATION**

30. BNT repeats all of the allegations from paragraphs 1- 29 above as set forth fully herein.

31. USC 42 § 1983 provides that every person acting under the "color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" who causes the, "deprivation of any rights, privileges or immunities secured by the Constitution and laws" will be liable to the injured party.

32. Mr. Hindson was an agent of the Kokomo-Center Schools in 2006 and 2007 when he violated BNT's Fourth Amendment right to privacy and security in her own person while using the school corporation's locker room facilities. As an agent of the Kokomo Center School Corporation Mr. Hindson had a duty to protect BNT's rights, including her right to privacy. Instead his violation of those rights led to BNT's subject to sexual exploitation.

33. Mr. Hindson was able to commit his criminal actions at facilities owned and operated by the Kokomo School Corporation because of the poor design of the locker room facilities. Mr. Hindson's office had windows and door vents that gave him direct, unrestricted visual access into the girls' locker room. Using these sightlines Mr. Hindson taped BNT while she used the girls' locker room.

34. The lack of official school policies and procedures concerning distribution of building keys and locker room access as well as neglecting to have a female locker room supervisor on site combined to enable Mr. Hindson to commit his criminal actions at facilities owned and operated by the Kokomo School Corporation.

35. Discovery will determine if any other Kokomo School Corporation employees, administrators, teachers or support staff were aware of these obvious design defects and policy deficiencies, subsequently failing to act to correct them, causing BNT's reputation to be damaged and leading to her sexual exploitation and subjecting them to personal liability under USC 42 § 1983.

## Prayer For Relief

36. BNT prays for the following relief:

   a. damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

   b. damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging

in similar conduct and inaction that could result in similar harms being

committed upon more school children and young athletes;

   c.  Attorney fees

   d.  Consequential damages.

   e.  Special damages

   f.  And amount of reasonable customary expenses and interest.

## Count Three:

### INDIVIDUAL LIABILITY FOR BRIAN HINDSON AND UNKNOWN ADMINISTRATORS AND SCHOOL OFFICIALS OF THE NOBLESVILLE SCHOOL CORPORATION

37. BNT repeats all of the allegations from paragraphs 1- 36 above as set forth

fully herein.

38. US Code 42 § 1983 ensures every person acting under the "color of any

statute, ordinance, regulation, custom, or usage, of any State or Territory" who

causes the, "deprivation of any rights, privileges or immunities secured by the

Constitution and laws" will be liable to the injured party.

39. Discovery will determine if Mr. Hindson was an agent of the Noblesville

School Corporation in 1998, 1999 when he violated BNT's Fourth

Amendment right to privacy and security in her own person while using the

school corporation's locker room facilities. On the premises of the Noblesville

School Corporation, BNT's Constitutional rights were violated, including her

right to privacy as well as her rights under the Fourth Amendment to be free of unconstitutional searches and seizures.

40. Upon information and belief Plaintiff feels that discovery will reveal to what extent other Noblesville School Corporation administrators, employees, , teachers or support staff were aware of these obvious design defects and policy deficiencies, subsequently failing to act to correct them, causing BNT's reputation to be damaged and leading to her global sexual exploitation and subjecting them to personal liability under USC 42 § 1983.

## **Prayer For Relief**

41. BNT prays for the following relief:

    **a.** damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

    **b.** damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes;

    **c.** Attorney fees

     **d.**  Consequential damages.

     **e.**  Special damages

     **f.**  And amount of reasonable customary expenses and interest.

## Count Four:

### BNT'S INJURIES WERE THE RESULT OF A STATE CREATED DANGER AT KOKOMO HIGH SCHOOL

42. BNT repeats all of the allegations from paragraphs 1- 41 above as set forth fully herein.

43. BNT's injuries were the result of a state created danger at Kokomo High School.

44. The Kokomo Center School Corporation has a duty to protect the Constitutional rights of its students, staff, and visitors, including their right to privacy. The Kokomo Center School Corporation breached this duty when it failed to develop and implement a key control policy, an adequate policy concerning facility usage, when it failed to have a female locker room supervisor and when they failed to discover the painfully obvious design defects of the Kokomo High School locker room. The combination of all of these factors led to Kokomo Center School Corporations breach of duty to protect BNT's right to privacy and caused her global sexual exploitation.

45. Plaintiffs upon information and belief feel that discovery will show that officials of the Kokomo-Center School Corporation participated in creating

the dangerous condition and acted with deliberate indifference to the known and obvious dangers. The lack of action by district officials was the moving force behind BNT's sexual exploitation.

46. Mr. Hindson was the swim coach at Kokomo High School from 2006 until his arrest in 2008. Mr. Hindson exploited the Kokomo-Center School Corporation's lax policy concerning key distribution to gain access to sensitive areas of the school, particularly the girls' locker room. Directly because of defendant Kokomo-Center School Corporations lack of a key control policy BNT's Fourth Amendment right to be free of illegal searches and seizures was violated. There must be a direct causal link between a municipal policy or custom and the alleged deprivation.

Kokomo-Center's failure to implement a policy constituted a policy of deliberate indifference, which led to BNT's sexual exploitation.  Kokomo's failure to monitor who had keys to the girls' locker room is even more alarming when coupled with the painfully obvious design flaws of the facility. The lack of a policy to monitor who had keys and access to the girls' locker room was the moving force that gave Mr. Hindson the access, location, and cover to commit his criminal acts. Whether or not these two factors constitute deliberate indifference on the part of the school corporation is a question for a jury to determine.

## Prayer For Relief

47. BNT prays for the following relief:

a. damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

b. damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes;

c. Attorney fees

d. Consequential damages.

e. Special damages

f. And amount of reasonable customary expenses and interest

## Count Five:

## TITLE IX

## WESTFIELD SCHOOL CORPORATION HAD ACTUAL KNOWLEDGE OF HOSTILE CONDITIONS AND ACTED WITH DELIBERATE INDIFFERENCE TO CORRECT THEM.

48. BNT repeats all of the allegations from paragraphs 1- 47 above as set forth fully herein.

49. "When enacting Title IX Congress sought to hold educational institutions liable for their own misconduct, not for the misconduct of their employees.

50. Under Title IX School Corporations have a duty to maintain an educational environment as free as possible of sexual discrimination. The Westfield-Washington School Corporation breeched that duty when their invitee over the period of years taped young women in his office in various states of undressing. Upon receipt of parental complaints concerning an adult male having teenage girls change in his office district officials acted with deliberate indifference. BNT and countless other young women continued to be sexually exploited and BNT suffered irreversible damage to her reputation has a result of the Westfield-Washington School Corporation's deliberate indifference.

51. However, a school district can be found liable for sexual harassment under Title IX when the districts own actions effectively caused the discrimination.

52. The Westfield-Washington School Corporation had actual knowledge of the conditions that led to the discrimination and subsequently acted with deliberate indifference to correct those conditions.

53. The Westfield-Washington School Corporation had knowledge of misconduct that created risks so great that they were almost certain to materialize if nothing was done. These risks did materialize and led to BNT's sexual exploitation.

54. The Westfield School Corporation had actual notice that Mr. Hindson was having young girls change in his office instead of in the girls' locker room or restroom.

55. Mr. Hindson filmed BNT several times in the coach's office at Westfield High School.

56. This exact harm, a swim coach having girls change in his office and then video taping them has occurred in other high schools around the country.

57. Instead of ejecting Mr. Hindson and "CIA" from their facilities and investigating the motivations behind Mr. Hindson's actions, the school corporation allowed CIA to continue to use its facilities for years. Upon information and belief, Plaintiff feels that discovery will reveal which specific School Board members and/or administrators had specific actual knowledge of parental complaints and when that knowledge was obtained.

### Prayer For Relief

58. BNT prays for the following relief:

    a. damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

    b. damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging

in similar conduct and inaction that could result in similar harms being
committed upon more school children and young athletes;

c. Attorney fees

d. Consequential damages.

e. Special damages

f. And amount of reasonable customary expenses and interest.

### Count Six:

### TITLE IX

### KOKOMO-CENTER SCHOOL CORPORATION HAD ACTUAL KNOWLEDGE OF HOSTILE CONDITIONS AND ACTED WITH DELIBERATE INDIFFERENCE TO CORRECT THEM.

59. BNT repeats all of the allegations from paragraphs 1- 58 above as set forth fully herein.

60. When enacting Title IX Congress sought to hold educational institutions liable for their own misconduct, not for the misconduct of their employees.

61. However, a school district can be found liable for sexual harassment under Title IX when the districts own actions effectively caused the discrimination.

62. Under Title IX School Corporations have a duty to maintain an educational environment as free as possible of sexual discrimination. The Kokomo-Center School Corporation breeched that duty when they failed to implement an adequate facility use policy, key monitoring, accessing monitoring system concerning sensitive areas of their facilities namely the girls' locker room.

Case 1:09-cv-00771-TWP-DML   Document 1-1   Filed 06/18/09   Page 25 of 48 PageID #: 29

These problems were further compounded by the lack of a female locker room supervisor and the poor design of the locker room. The deficiencies in policy and practice allowed a district official over the period of years to tape young women in its girls' locker room in various states of undressing. BNT and countless other young women continued to be sexually exploited and BNT suffered irreversible damage to her reputation as a result of the Kokomo-Center School Corporations deliberate indifference.

63. The Kokomo-Center School Corporation had actual knowledge of the conditions that led to the discrimination against and exploitation of BNT and subsequently acted with deliberate indifference to correct those conditions.

64. Even if the Kokomo-Center School Corporation did not posses actual knowledge of a teachers acts directed at plaintiff, Corporation officials still had knowledge of misconduct that created risks so great that they were almost certain to materialize if nothing was done. Sadly they did materialize and BNT suffered permanent global sexual exploitation.

65. Kokomo's failure to monitor or control who was given keys to their facilities, particularly the girls' locker room was the moving force that allowed Mr. Hindson to commit his criminal acts. When coupled with the poor design of the Kokomo locker room, the criminal acts of Mr. Hindson, were almost certain to materialize.

66. The Kokomo-Center School Corporation had knowledge that uncontrolled access to a high school girls' locker room generally, not to mention one as badly designed as Kokomo's, was inviting grave harm upon its female

Page 24 of 48

students and community members. District officials, administrators, employees, athletic directors, coaches, teachers, and school board members, responded with deliberate indifference to these obvious risks, taking no action to correct them until after Mr. Hindson's arrest when they no longer could be ignored.

67. Plaintiff upon information and belief feel that discovery will show which specific School Board members and/or administrators, teachers or employees had specific actual knowledge of Mr. Hindson's criminal actions prior to arrest.

## Prayer For Relief

68. BNT prays for the following relief:

   a. damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

   b. damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes;

     c.  Attorney fees;

     d.  Consequential damages;

     e.  Special damages;

     f.  And amount of reasonable customary expenses and interest.

## Count Seven:

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69. BNT repeats all of the allegations from paragraphs 1- 68 above as set forth fully herein.

70. The harm inflicted upon BNT resulted from Defendant's extreme and outrageous conduct.

71. It is beyond dispute that Defendant Hindson, while a coach of a US Swimming sanctioned club, intentionally sexually exploited an untold number of women, including BNT. This sexual exploitation caused BNT extreme permanent emotional distress for which she has sought counseling.

72. The complete lack of supervision and flagrant oversight concerning access to the girl's locker facilities at all three of defendant school district's aquatic facility constitutes extreme and outrageous conduct. The direct result of this conduct is the permanent, global, public sexual humiliation of BNT.

73. Allowing any member of the community who leased pool space to have total access to the girls' locker room facilities ignored the painful realities of modern life. There exists countless examples of similar situations occurring at

schools throughout Indiana and some of those cases have resulted in litigation over the very issues addressed in the present complaint (see *Roe v. North Adams Community Schools,* 647 N.E. 2d 655). In the case involving North Adams High School (in pre- internet 1989) issuance of keys and locker room access was far more regulated than at any of the defendant's facilities. Defendants were or should have been well aware of the consequences that have historically resulted from uncontrolled access to locker rooms used by teenage girls.

74. The actions or inactions of the Defendants all occurred on school grounds during the scope of their employment with their respective districts.

75. As a direct and foreseeable consequence of Defendant's outrageous failure to monitor who had access to the girls' locker room BNT suffered mental anguish and distress. She has suffered injuries to her reputation that cannot be repaired as well as the possibility of future economic losses. Most importantly she has been permanently, sexually exploited, humiliated, and robbed of her dignity for eternity in front of a global audience.

## Prayer For Relief

76. BNT prays for the following relief:

    a. damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional

opportunities, and other injuries proximately caused by Defendants'
negligent and harmful actions.

b.  damages in an amount to be established at trial to punish Defendants
for their extreme negligence and outrageous conduct that recklessly
disregarded BNT's emotional and sexual well being; most importantly
to discourage Defendants and others similarly situated from engaging
in similar conduct and inaction that could result in similar harms being
committed upon more school children and young athletes;

c.  Consequential damages;

d.  Special damages;

e.  And amount of reasonable customary expenses and interest.


### Count Eight:

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

77. BNT repeats the allegations in Paragraphs 1-76 above as if set forth fully
herein.

78. The actions or lack thereof taken by the Defendants named in Count One at
the minimum reached the level of gross negligence, with regards to the
emotional well being of BNT.

79. The school district's failure to uncover unsafe conditions and design flaws,
which existed for years on their premises resulted in the public sexual

exploitation of an untold number of their students and invitees, including BNT.

80. The school districts, particularly Kokomo, had no knowledge of and made no attempt to discern who was using their facilities. Kokomo knew or should have known who was using their facilities. Further, Kokomo had no control over or management/monitoring system of the keys to sensitive areas of their facilities, including the women's locker rooms and failed to site supervisors in addition to the swim coach Mr. Hindson.

81. Westfield High School had knowledge of parental concerns about access to girls' locker rooms at Westfield High School. Westfield failed to take appropriate measures to prevent situations like the present one from happening despite this knowledge and failed to provide site supervisors and failed to regularly and intermittently inspect the premises.

82. Noblesville High School should have supervised the "5/6" aquatic facilities when CIA was practicing at those facilities.

83. All three schools and US Swimming acted negligently and or recklessly in failing to investigate parental concerns about access to the girls' locker rooms at the facilities they either owned or leased. All the Defendants, through inactions amounting to negligence, gross negligence and/or extreme recklessness, breached the duty of care that both parents and students have a right to reasonably expect from a school district or trusted organization like US Swimming while entrusting them with the care and safety of their children while on school grounds.

84. As a result of the inaction of the Defendants, BNT has been subjected to continued irreversible and uncontrollable, global public sexual exploitation.

## **Prayer For Relief**

85. Plaintiff prays for the following relief:

   a. damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

   b. damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes;

   c. Consequential damages;

   d. Special damages;

   e. And amount of reasonable customary expenses and interest.

## Count Nine:

## INVASION OF PRIVACY: PUBLIC DISCLOSURE OF PRIVATE FACTS

86. Plaintiff repeats allegations contained in Paragraphs 1-85 above as if set forth fully herein.

87. The Defendants' inaction, lack of supervision and failure to monitor access to facilities, negligent and/or reckless disregard for the realities of modern life and technology led to Plaintiff becoming an unknowing pornographic model on a global scale.

88. The most private, sexual facts concerning BNT have been disclosed to an unascertainable global audience for eternity. This exploitation is coercive, oppressive and destructive to BNT's hard won athletic and personal reputations not only in Indiana and in the swimming community, but in the global community brought together via the Internet.

89. It is without question that the posting of nude pictures of teenage girls, without their permission or knowledge, for the world to see is extremely offensive and degrading to any person of ordinary sensibilities. The disclosure of private sexual facts about BNT has caused her extreme embarrassment and tarnished her reputation in the swimming and general communities.

## Prayer For Relief

90. BNT prays for the following relief:

   a. damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future

economic losses, invasion of privacy, loss of future professional

opportunities, and other injuries proximately caused by Defendants'

negligent and harmful actions.

**b.** damages in an amount to be established at trial to punish Defendants

for their extreme negligence and outrageous conduct that recklessly

disregarded BNT's emotional and sexual well being; most importantly

to discourage Defendants and others similarly situated from engaging

in similar conduct and inaction that could result in similar harms being

committed upon more school children and young athletes;

**c.** Consequential damages;

**d.** Special damages;

**e.** And amount of reasonable customary expenses and interest.


## Count Ten:

## INVASION OF PRIVACY: BY PHYSICAL INTRUSION

91. BNT repeats allegations contained in Paragraphs 1 through 90 above as if set

forth fully herein.

92. Defendants' inactions, complete lack of supervision, and ignorance to the use

and access of their facilities caused BNT's physical space to be violated.

93. BNT's physical space was violated in the most private and personal way,

while she was taped showering, using the bathroom and changing from the

time she was a teenager into her mid-twenties.

94. No reasonable person expects to be filmed and to subsequently have those images shown to the world while using a public locker room facility, particularly at a public school or at a practice or competition sanctioned by an organization as respected as US Swimming.

95. The inactions and failure to correct obvious conditions, design flaws and to investigate parental complaints concerning facilities and access which individuals and groups had to those facilities were committed clearly within the scope of employment for employees of all three Defendant school corporations.

96. As a direct and foreseeable result of Defendants' lack of action, investigation, management and supervision, numerous girls and young women, including BNT had their privacy invaded and have been subsequently sexually humiliated in front of a global audience for the remainder of their lives.

97. The Defendants each owed a duty to each student and invitee to act in a manner that would protect their physical safety when they entered upon the premises owned or leased by each of the Defendants. Defendants acting within the scope of their employment with the three school districts and USS willingly failed to follow their own procedures and failed to enact procedures that common sense so clearly dictates, are necessary to avoid this very sort of direct and foreseeable personal violation of young people including BNT.

98. It would be highly objectionable and offensive to a reasonable person to know that they were being filmed while using a high school locker room. The fact

that the pictures and videos were then broadcast to a world-wide audience makes it even more disturbing, actionable and compensable.

### **Prayer For Relief**

99. BNT prays for the following relief:

    **a.** damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

    **b.** damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes;

    **c.** Consequential damages;

    **d.** Special damages;

    **e.** And amount of reasonable customary expenses and interest pursuit

## Count Eleven:

## NEGLIGENT SUPERVISION

100. BNT repeats the allegations in Paragraphs 1-99 as if set forth fully herein.

101. Brian Hindson was an agent, servant and or employee of both the Kokomo School Corporation (2006-08) and US Swimming. Upon information and belief plaintiff believes that Mr. Hindson also had a coaching relationship with the Noblesville School Corporation in the late 1990's.

102. Defendant Hindson was acting in the scope of his employment as a swim coach for both the Kokomo School Corporation and US Swimming when he committed the tortuous acts that resulted in the permanent injuries to BNT.

103. As a school corporation employee, Kokomo knew or had reason to know, based on Mr. Hindson's behavior and elaborate schemes of the tortuous actions he was committing against BNT and countless other young women and girls.

104. Due to the sheer duration, in excess of ten years, USS and the other Defendants had ample time and opportunity to discover the tortuous actions of its employee, club coach/president, and representative Mr. Hindson.

105. Kokomo completely failed to supervise and/or monitor whoever was using their facilities certainly falling well below the level of care of an ordinarily prudent person would exercise in supervising access to a locker room full of teenage girls. This lack of supervision of all groups, but particularly of Central Indiana Aquatics and Mr. Hindson, directly led to BNT's injuries.

106. Westfield was aware of parental complaints concerning access to their girls' locker rooms, but did not make any necessary facility improvement to prevent the sexual exploitation of countless young women by Mr. Hindson.

107. Noblesville should have monitored the "5/6" building more closely while Central Indiana Aquatics and other groups used the facility.

108. The Defendant's collective breach of duty to properly supervise and monitor those groups and individuals that used their facilities, or to monitor their own employees caused BNT irreparable harm to her reputation and subjected her to world wide sexual humiliation and permanent exploitation.

## Prayer For Relief

109. BNT prays for the following relief:

    **a.**  damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

    **b.**  damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes;

    **c.**  Consequential damages;

d.  Special damages;

e.  And amount of reasonable customary expenses and interest.

### Count Twelve:

## BREACH OF DUTY OF CARE REQUIRED OF DEFENDANT SCHOOL CORPORATIONS

110. BNT repeats the allegations in Paragraph 1-109 above as if it set forth fully

herein.

111. Parents have a reasonable expectation that their children will be safe from

physical harm and sexual exploitation while on the grounds of a public school,

for school sponsored, endorsed, supported or permitted activities.

112. All three school districts breached this duty to BNT and countless other

young women not parties to this action.

113. Kokomo High School, by its own admission did not maintain written records

of which person, or groups were given keys or access to the girls' locker

rooms for the years 2000-2008 inclusive. The Kokomo School Corporation

was in violation of its, "Use of School Facilities" policy in that they did not

obtain written agreements from groups to use their premises. Kokomo failed

to keep adequate records of who was using their facilities or had access to

them.

114. This lack of record keeping, monitoring, and supervision led to the

exploitation of BNT. Because the Kokomo School Corporation breached this

duty to their community BNT suffered extreme life long injuries.

115. Noblesville had reason to know that the members of Central Indiana Aquatics, while not necessarily district students, were teenage and minor children who were invitees of the district who were using their athletic facilities to change for CIA activities.

116. The unfortunate violation of BNT and other young women was a direct result of the Noblesville School Corporation's breach of its duty to its community to ensure the safety of all young people who used their facilities.

117. The Westfield school corporation as stated above was aware of parental concerns regarding access to the girls' locker room. BNT was not a student at Westfield, but as a teenage invitee she and her parents had a reasonable belief to expect their daughter was safe while swimming at the school corporation's pool. The sheer duration of the taping at Westfield, spanning the entire high school careers of generations of swimmers gave the Westfield School Corporation ample opportunities to correct the design flaws and access to facilities policies to ensure that these events did not occur. As a result of Westfield's failure to take these logical safety measures, BNT and an untold number of young women were violated by a district invitee Mr. Hindson.

## **Prayer For Relief**

118. BNT prays for the following relief:

    a. damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional

opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

**b.** damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes;

**c.** Consequential damages;

**d.** Special damages;

**e.** And amount of reasonable customary expenses and interest.

## Count Thirteen:

## NEGLIGENCE BY ALL THREE DEFENDANT SCHOOL DISTRCITS

119. BNT incorporates the allegations in paragraphs 1-118 above.

120. All three school districts owed BNT, as a minor, student invitee, and adult invitee of the premises, a duty to reasonably ensure her safety from acts like those committed by Mr. Hindson.

121. Defendant school corporation's failure to inspect their locker rooms, discover obvious design flaws in their buildings and to track and monitor those who had access to those facilities breached their duty to protect the

safety of the young people who used their facilities and led to the direct sexual exploitation of BNT.

## **Prayer For Relief**

122. BNT prays for the following relief:

    **a.**  damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

    **b.**  damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes;

    **c.**  Consequential damages;

    **d.**  Special damages;

    **e.**  And amount of reasonable customary expenses and interest.

**Count Fourteen:**

## BREACH OF DUTY BASED ON A SPECIAL RELATIONSHIP OF MUTUAL BENEFIT BETWEEN PLAINTIFF AND US SWIMMING

123. BNT incorporates the allegations in paragraphs 1-123 above.

124. Defendant US Swimming had a special relationship with BNT in Indiana. As a result of her athletic accomplishments, BNT attracted other area swimmers to Coach Hindson and Central Indiana Aquatics. These swimmers became dues paying members of US Swimming. As a result US Swimming enjoyed increased revenues and more importantly, US Swimming benefited from the goodwill of being associated with a person and athlete of the caliber of BNT.

125. US Swimming has substantial control over swimmers of BNT's caliber. High level athletes are restricted in the medications they can take, the foods they can eat and most submit to intrusive random drug testing.

126. US Swimming repeatedly violated their duty of care by allowing Mr. Hindson to be a coach of the most prestigious swim club in Indiana, CIA. US Swimming's endorsement of Mr. Hindson gave Coach Hindson valuable credibility that he used to attract other young athletes to CIA. Subsequently over a ten-year span these athletes were sexually exploited by Coach Hindson.

127. US Swimming's breach of duty directly and foreseeably caused injuries to BNT, including sexual exploitation on a global scale and of permanent duration, severe emotional distress and damage to her athletic and personal reputation.

**Prayer For Relief**

128. BNT prays for the following relief:

   **a.**  damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

   **b.**  damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes;

   **c.**  Consequential damages;

   **d.**  Special damages;

   **e.**  And amount of reasonable customary expenses and interest.

**Count Fifteen:**

**BREACH OF DUTY BASED ON A SPECIAL RELATIONSHIP OF MUTUAL
BENEFIT BETWEEN BNT AND KOKOMO HIGH SCHOOL  CORPORATION**

129. BNT incorporates the allegations in paragraphs 1- 131 fully herein.

130. BNT's athletic accomplishments have been clearly established above,

including the fact that she was Kokomo High School's first state champion.

Her athletic fame attracted other students to join the Kokomo High School

swim team and become ambassadors for the Kokomo School Corporation.

These swimmers were subsequently exploited by Brian Hindson, who was an

official employee of the Kokomo School Corporation --employed as head

boys' and girls' swim coach.

131. The Kokomo School Corporations breach of duty directly and forseeably

caused BNT, and countless other young women, to be sexually exploited, and

specifically damaged Plaintiff's personal, professional and athletic

reputations.


**Prayer For Relief**

132. BNT prays for the following relief:

    a.  damages in an amount to be established at trial as compensation for

permanent damages to reputation, emotional pain and suffering, future

economic losses, invasion of privacy, loss of future professional

opportunities, and other injuries proximately caused by Defendants'

negligent and harmful actions.

    **b.**  damages in an amount to be established at trial to punish Defendants

for their extreme negligence and outrageous conduct that recklessly

disregarded BNT's emotional and sexual well being; most importantly

to discourage Defendants and others similarly situated from engaging

in similar conduct and inaction that could result in similar harms being

committed upon more school children and young athletes;

    **c.**  Consequential damages;

    **d.**  Special damages;

    **e.**  And amount of reasonable customary expenses and interest pursuit

### Count Sixteen:

### BREACH OF CONTRACT BETWEEN US SWIMMING AND BNT

133. BNT incorporates the allegations in paragraphs 1-133 fully herein.

134. Plaintiff was a member in good standing with US Swimming at all relevant

times concerning this case. As a due paying member of the organization,

Plaintiff and US Swimming had a contractual relationship.

135. US Swimming breached its duty to provide its members with a safe

swimming environment free of the type of harms inflicted upon Plaintiff by

Coach Hindson, a coach whose club was sanctioned and endorsed by US

Swimming.

136. US Swimming's failure to provide its members with a safe environment at

practices conducted under their sanction directly led to the sexual exploitation

and injuries suffered by Plaintiff and countless other young women who were also members of USS.

### **Prayer For Relief**

137. BNT prays for the following relief:

    **a.**  damages in an amount to be established at trial as compensation for permanent damages to reputation, emotional pain and suffering, future economic losses, invasion of privacy, loss of future professional opportunities, and other injuries proximately caused by Defendants' negligent and harmful actions.

    **b.**  damages in an amount to be established at trial to punish Defendants for their extreme negligence and outrageous conduct that recklessly disregarded BNT's emotional and sexual well being; most importantly to discourage Defendants and others similarly situated from engaging in similar conduct and inaction that could result in similar harms being committed upon more school children and young athletes.

    **c.**  Punitive damages;

    **d.**  Attorney fees;

    **e.**  Consequential damages;

    **f.**  Special damages;

    **g.**  And amount of reasonable customary expenses and interest.

**<u>Demand for Jury Trial</u>**

Plaintiff hereby requests a trial by jury on all counts.

Respectfully Submitted,

Jonathan Charles Little
IN Bar # 27421-49

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct Copy of this Motion has been served upon Brian D. Hindson and the counsel for remaining Defendants by first class mail, postage prepaid, at the addresses below this 10th day of June 2009.

Thomas Wheeler
Frost Brown Todd LLC. 201 North Illinois Street,
Suite 1900.
Indianapolis, IN 46244-0961

Bernard Pylitt
334 N Senate Ave
Indianapolis, IN 46204

Brian D. Hindson
FCI Marianna Correctional Institution
PO BOX 7007
Marianna, FL 32447

Jonathan C. Little
Attorney for Plaintiffs
IN Bar #27421-49
8902 Otis Ave
Suite 201
Indianapolis, IN 46216
Phone: (812)320-3367
Email: jonlittlelaw@gmail.com