## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| BROOKE N. TAFLINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:09-cv-00771-TWP-DML |
| ) | |
| BRIAN HINDSON, CENTRAL INDIANA ) | |
| AQUATICS, UNITED STATES ) | |
| SWIMMING, INC., and WESTFIELD- ) | |
| WASHINGTON SCHOOL CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## ENTRY ON PENDING MOTIONS

Defendant Brian Hindson ("Hindson"), a former swimming coach and a sexual predator, is currently serving a lengthy prison sentence for surreptitiously videotaping numerous girls that he coached, while they showered and changed clothes in a locker room. Plaintiff Brooke Taflinger ("Taflinger"), a world-class swimmer, was one of his victims. In response to this horrible breach of trust, Taflinger has sued numerous defendants. The matter is presently before the Court on four motions: (1) Defendant Westfield-Washington School Corporation's ("Westfield") Motion for Summary Judgment (Dkt. 100); (2) Defendant United States Swimming, Inc.'s ("U.S. Swimming") Motion for Summary Judgment (Dkt. 103); (3) Taflinger's Motion to Re-open Discovery (Dkt. 193); and (4) Westfield, Kokomo-Center Township Consolidated Schools, and Noblesville School Corporation's Motion for Attorney Fees and Costs (Dkt. 201).

## I. <u>FACTUAL BACKGROUND</u>[1]

In 1998, Hindson founded Westfield Area Swimmers, which later became Central Indiana Aquatics (referred to throughout as Hindson's "club team"). Hindson's club team was organized under the auspices of U.S. Swimming, a non-profit corporation comprised of thousands of coaches and hundreds of thousands of swimmers who voluntarily paid dues to be members of the organization. U.S. Swimming regulates its swimmers' techniques and tracks their performances in sanctioned competitions to ensure that swimmers are eligible to represent the United States at the Olympics.

Taflinger first became acquainted with Hindson in 1997 when she was a sophomore at Kokomo High School. Eventually, Taflinger joined Hindson's club team and earned a swimming scholarship to the University of Florida. During the summer of 2000, the summer after Taflinger's high school graduation, Hindson's club team used Westfield's pool for practices. Hindson had unrestricted access to Westfield's pool and facilities. On Fridays, Westfield's swim coach relied on Hindson to run the afternoon swim practice. Hindson also ran Westfield's swim practices over Thanksgiving and winter vacations. Similarly, Hindson was in charge of Westfield's off-season conditioning program.

At different times, Hindson offered to let some of his swimmers, including Taflinger, use Westfield's coaches' office as a changing room.  Unbeknownst to Taflinger, Hindson had placed a video camera in a padlocked locker to record footage of Taflinger and others changing in the coaches' office.

---

[1]This factual background should look familiar to the parties. *See Taflinger v. Hindson*, 771 F. Supp. 2d 931 (S.D. Ind. 2011) *vacated and remanded Taflinger v. U.S. Swimming, Inc.*, 435 Fed. Appx. 559 (7th Cir. 2011).

In 2008, the FBI received a report that Hindson had sold a computer on E-Bay that contained pornographic images. After obtaining a search warrant, the FBI searched Hindson's residence and seized video footage of Taflinger changing out of her clothes and into a bathing suit. The FBI also seized video footage of other swimmers in various states of undress. Eventually, Hindson pled guilty to 11 counts of production of child pornography, four counts of distribution of child pornography, and one count of possession of child pornography, none of which relate to footage of Taflinger, who was 18 when she was video-taped.  Hindson is currently serving a 400 month sentence at the Federal Correctional Institution in Marianna, Florida, to be followed by lifetime supervision upon release.

## II. PROCEDURAL HISTORY

In June 2009, Taflinger filed this suit in Hamilton County Superior Court against Hindson, U.S. Swimming, Westfield, Central Indiana Aquatics, Indiana Swimming (the state chapter of U.S. Swimming), and two other school districts (Kokomo-Center Township Consolidated Schools and Noblesville School Corporation). Within days, this lawsuit arrived at the district court on a Notice of Removal based on Taflinger's federal claims brought against the three schools. (Dkt. 1.)  Clerk's entries of default were entered against Hindson and his club, Central Indiana Aquatics (Dkt. 36, 163), and Taflinger dismissed her complaint against Indiana Swimming and the two other school districts (Dkt. 52, 68, 69).  This left Westfield and U.S. Swimming as the only Defendants actively litigating the case.

Taflinger's 48-page complaint contains 16 claims: three under 42 U.S.C. § 1983, two under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and eleven arising under Indiana law.  Westfield was included as a defendant in the federal claims; U.S. Swimming

3

was not.  As for the state claims, Taflinger sought to hold both defendants liable for intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy by public disclosure of private facts, invasion of privacy by physical intrusion, and negligent supervision. With respect to U.S. Swimming, Taflinger included claims for breach of a duty of care based on a special relationship and for breach of a contractual duty to provide a safe environment. She also brought claims against Westfield for negligence and breach of a duty of care. *See Taflinger v. U.S. Swimming, Inc.*, 435 Fed. Appx. 559, 561 (7th Cir. 2011).

Eventually, both Westfield and U.S. Swimming filed separate motions for summary judgment.  (Dkt. 100, 103.)  On January 26, 2011, the Court entered summary judgment in favor of Westfield on all federal claims, as well as Taflinger's state law claim for negligent infliction of emotional distress.  *See Taflinger v. Hindson*, 771 F. Supp. 2d 931 (S.D. Ind. 2011).  Only the state law claims remained pending against both U.S. Swimming and Westfield.

With no federal claims left, this Court opted not to exercise supplemental jurisdiction over the remaining state law claims and remanded them back to Hamilton County Superior Court.  In response, Westfield and U.S. Swimming appealed, arguing that the Court abused its discretion by not maintaining supplemental jurisdiction over the remaining state law claims.  The Seventh Circuit agreed, remanding the state law claims back to this Court.  Importantly, in its order, the Seventh Circuit indicated how this Court should rule on the pending state law claims, remarking that "the outcome of [the summary judgment motions] is clear," and "remanding the claims to state court will prolong the resolution of those motions." *Taflinger*, 435 Fed. Appx. at 562.  Notably, this mandate is the law of the case, and thus binding on this Court on remand.  *See*

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 591 (7th Cir. 1998) (citations omitted).

Specifically, with respect to Westfield, the Seventh Circuit noted "that there is no evidence Hindson was an employee or agent of [Westfield], or that the school district knew or should have known about his misconduct." *Id*. On November 4, 2011, the Court, heeding the Seventh Circuit's guidance, entered judgment in Westfield's favor. (Dkt. 200.) Although it did not expressly say so, by issuing this judgment, the Court effectively **GRANTED** Westfield's Motion for Summary Judgment (Dkt. 100).

This leaves U.S. Swimming's motion for summary judgment. In light of the Seventh Circuit's order, it appears that Taflinger's claims against U.S. Swimming must meet the same fate. Tellingly, the Seventh Circuit described Taflinger's claims against U.S. Swimming as "even more tenuous" than those against Westfield, writing that "there is no evidence of any duty, contractual or otherwise, running to [Taflinger]." *Taflinger*, 435 Fed. Appx. At 562. Nonetheless, following the Seventh Circuit's order, Taflinger asked this Court to re-open discovery with respect to U.S. Swimming, making serious accusations that U.S. Swimming wrongfully withheld certain evidence. Because the motion to re-open discovery is, in effect, a threshold issue, the Court must resolve it before turning to U.S. Swimming's summary judgment motion. The Court will do so now.

### III. Taflinger's Motion to Re-Open Discovery (Dkt. 193) and U.S. Swimming's Motion for Summary Judgment (Dkt. 103)

It is well-settled that "[t]he litigation process does not include a dress rehearsal or practice run for the parties." *Winters v. Fru-Con, Inc*., 498 F.3d 734, 743 (7th Cir. 2007) (citations and internal quotations omitted). Therefore, the mere failure of counsel to fully

develop his theory of the case during the normal discovery process does not warrant a "do over."

*Id.* That reasoning applies with particular force here.

Discovery in this case was closed on June 1, 2010. (Dkt. 193 at 1.)  More than 16 months

later, on October 19, 2011, Taflinger formally asked to re-open discovery against U.S.

Swimming.  Given the amount of time that has passed since the close of discovery, this is an

extraordinary request.  However, Taflinger's counsel explains that it is warranted because,

through discovery in other "similar" cases, he has learned that U.S. Swimming "has been

withholding document and information regarding the forseeability and liability directly relevant

in the present case." (Dkt. 193 at 1.)  According to Taflinger, these documents will help enhance

the Court's understanding of the case for purposes of summary judgment.

U.S. Swimming fires back, in an overheated fashion, by raising the specter of Fed. R.

Civ. P. 11.  From there, U.S. Swimming's argument can be summarized as follows:

> USA Swimming provided a written response to each and every request for
> production of documents served on it by Plaintiff.  Plaintiff has not denied this
> point. Similarly, Plaintiff has not argued or put forth evidence that USA
> Swimming represented to her documents do not exist that she later learned to be
> incorrect. What did happen is that Plaintiff made a document request, USA
> Swimming responded and then Plaintiff made absolutely no further efforts with
> respect to her sole written discovery request to USA Swimming. After that point,
> Plaintiff gave no indication whatsoever that she was discontent with USA
> Swimming's written response. Thereafter, USA Swimming relied upon Plaintiff's
> acceptance of its written response and moved forward with the case by filing its
> Motion for Summary Judgment.

(Dkt. 213 at 2.)  In other words, if Taflinger's counsel did not unearth enough useful information

through the normal discovery process, then that is a problem of his own making.

In the Court's view, the above course of events seals the deal.  U.S. Swimming filed a

summary judgment motion – the "put up or shut up moment in a lawsuit" – in June 2010.

*Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (citations and internal quotations omitted). Prior to that, Taflinger's counsel had ample time and ability to pursue discovery using all available channels, and has offered no evidence to support the notion that U.S. Swimming has actually withheld evidence (i.e. that it failed to turn over information after Taflinger asked for it). On this point, U.S. Swimming writes that "[u]nbelievably, Taflinger makes her accusations without ever making a written document request in this matter, under the rules, to USA Swimming concerning the filming of swimmers in locker rooms by other coaches – the only subject matter of this lawsuit." (Dkt. 191 at 3.) Moreover, Taflinger's counsel admits that he "primarily relied on discovery from the sister case of *Jane Doe v. King, et al.* in Santa Clara County, California to obtain information regarding [Taflinger's] claims." (Dkt. 190 at 2.) In short, it seems that the present situation is merely the product of Taflinger's counsel's deficient use of the discovery tools.

And, notwithstanding discovery issues, Taflinger's "smoking gun" does not justify delaying the resolution of U.S. Swimming's summary judgment motion. Taflinger claims her new evidence completely undermines the testimony of U.S. Swimming's Executive Director, Charles Wielgus, that "the issue of swim coaches filming athletes in a nude environment" was "[n]ot even on the radar screen" and was "totally unforseeable, unanticipated." But, upon closer review, that contention is not accurate. Taflinger's new evidence consists of January 20, 2005 interview notes of an outside investigator stemming from a 2004 incident in which a coach may have *physically assaulted* a swimmer before a scheduled practice by pushing the swimmer, hitting him, and choking him with a towel. The interview notes describe this incident in detail. Then, the individual being interviewed (his name is redacted) states that he believed that he was

videotaped roughly two years earlier *while he was living with the swim coach at the coach's residence* – clearly outside of the normal coach/athlete relationship and not involving a locker room. From this, Taflinger asks the Court to infer that, in effect, U.S. Swimming "enabled and covered up a ring of child molesters for decades." (Dkt. 193 at 1.) Even more colorfully, Taflinger's counsel analogizes U.S. Swimming to "a warm and moist environment [that] enables scum to grow and propagate." (Dkt. 197 at 2-3.) But, bombastic rhetoric aside, it is worth highlighting that the individual being interviewed noted that he never contacted "the police [or] USA Swimming . . .concerning . . . alleged improper video taping" and no formal complaint was ever filed.

In short, for these reasons, among others, this report would not change the outcome of the Court's ruling on summary judgment in light of the Seventh Circuit's mandate. Finally, although the Court's ruling does not turn on this issue, it is worth noting that, as a practical matter, a contrary ruling risks transforming this "needlessly long case into an interminable one." *Garcia v. Ill. State Police*, 545 F. Supp. 2d 823, 830-31 (C.D. Ill. 2008). Taflinger's Motion to Re-open Discovery (Dkt. 193) is **DENIED**. It necessarily follows that U.S. Swimming's Motion for Summary Judgment (Dkt. 103) is **GRANTED**.

## IV. The Schools' Motion for Attorney Fees and Costs

Finally, all of the schools initially sued by Taflinger – Westfield, Kokomo-Center Township Consolidated Schools, and Noblesville School Corporation (collectively, "Schools") – have moved for attorney's fees and costs under Rule 11, 42 U.S.C. § 1988, 28 U.S.C. § 1927, Indiana Code § 34-52-1-1, Rule 54(d). The Court will analyze the requests for fees separately from the requests for costs.

### A.    Attorney's Fees

The Schools' requests for attorney's fees did not arise in a vacuum.  On December 10, 2008, Taflinger's counsel, sent the proposed complaint in this case to Defendants and their legal counsel.  The complaint itself contained some intemperate rhetorical flair aimed squarely at the Schools: "For approximately ten (10) years all three school corporations . . . allowed defendant Brian Hindson to operate a child pornography factory on their premises . . . ." On January 8, 2009, the Schools responded with a letter sent "pursuant to the dictates of Rule 11" advising Taflinger that her claims were deficient and warning that they would ultimately seek attorney's fees. The letter concluded, "[i]n the event that you do move forward and file the litigation threatened in your email of December 10, 2008, rest assured that the Schools will vigorously defend themselves and will aggressively seek sanctions, attorney's fees and costs . . . ." Taflinger's counsel clearly was on notice that sanctions would be on the table. Undeterred, Taflinger filed a 48-page, 16 count complaint.  And, as discussed, all of Taflinger's claims against the Schools were ultimately rejected, by either this Court or by unmistakable implication through the Seventh Circuit's order.

But, obviously, losing a case does not automatically trigger a sanctions award. Therefore, a review of the relevant standards that apply to attorney's fees is required.  First, Rule 11(b) provides, in relevant part, as follows:

> By presenting to the court a pleading, written motion, or other paper … an attorney … certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

Fed. R. Civ. P. 11(b).  While this Court has previously levied sanctions against attorneys who engage in troubling conduct in violation of Rule 11, s*ee, e.g., United States v. ITT Educational Services, Inc.*, 2012 WL 1028794 (S.D. Ind. March 26, 2012), the Court is mindful that Rule 11 sanctions are "to be imposed sparingly, as they can have significant impact beyond the merits of the individual case and can affect the reputation and creativity of counsel." *Hartmax Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) (citation and internal quotations omitted).

In addition to relying on Rule 11, the Schools also cite 42 U.S.C. § 1988(b), which gives the court discretion to award reasonable attorney's fees as part of costs for Section 1983 claims. But such fees should be awarded to a prevailing defendant only if the lawsuit was "frivolous, unreasonable, or without foundation . . . or if the plaintiff continued to litigate after it clearly became so." *Eichman v. Linden & Sons, Inc.*, 752 F.2d 1246, 1248 (7th Cir. 1985) (citation omitted).

Moving on to 28 U.S.C. § 1927, this statute gives the Court authority to order plaintiff's counsel to satisfy an award *personally*, providing that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added). Section 1927's principal purpose is "the deterrence of intentional and unnecessary delay in the proceedings." *Beatrice Foods Co. v. New*

10

*England Printing & Lithographing Co.*, 899 F.2d 1171, 1177 (Fed. Cir. 1990). Given its punitive nature, however, this statute "has been strictly construed." *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1166 (7th Cir. 1983).

Finally, Indiana Code § 34-52-1-1(b) follows a similar trajectory as its federal counterparts, providing that attorney's fees are available to a prevailing party where the action "is frivolous, unreasonable, or groundless" or the party litigated "in bad faith" or "continued to litigate . . . after the party's claim . . . clearly became frivolous, unreasonable, or groundless." Ind. Code § 34-52-1-1(b).

Taflinger's claims against the Schools faced an uphill battle since the beginning of this case. Nonetheless, many claims start as idealistic and uphill battles, only to defy the odds and prevail. This is certainly how Taflinger's counsel envisioned this case proceeding; he describes himself as a lawyer who, when this case began, was "months out of law school, with a private practice in its infancy, but who was passionate about [Plaintiff's] cause[.]" (Dkt. 208 at 2). Suffice it to say, this Court does not view Taflinger's claims as particularly frivolous, vexatious, or groundless – or any other adjective that would warrant the severe sanction of attorney's fees.

After all, as mentioned in the factual background above, Hindson certainly had some relational ties with Westfield. As Taflinger notes, "[w]hile the Court has ruled that this was not enough to make Hindson an agent, servant, or employee of Westfield . . . it hardly renders Taflinger's claims to the contrary frivolous under Rule 11." (Dkt. 208 at 10). Indeed, a "Rule 11 sanction is a tool that must be used with the utmost care and caution." *Vista Manufacturing, Inc. v. Trac-4, Inc.*, 131 F.R.D. 134, 144 (N.D. Ind. 1990). Because "[d]ecisive facts may not emerge until discovery or trial" and "[t]he law may change or clarify in the midst of litigation," courts

should "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978). That reasoning applies with some force here.

In the end, it is unfortunate that the Schools were forced to expend a considerable sum defending some of these questionable claims, but that is at times an inevitable by-product of the "American Rule," where the prevailing litigant "is not ordinarily allowed to collect attorney's fees from the losing side." *In re Sokolik*, 635 F.3d 261, 267 (7th Cir. 2011). The Schools' request for attorneys' fees is therefore **DENIED**.

Finally, just as Taflinger's lawsuit against the Schools was not frivolous, nor was the Schools' present motion. Indeed, many of Taflinger's claims against the school were weak, and Taflinger's complaint was hardly a model of professionalism. In particular, the line about the schools operating as a "child pornography factory" was beyond the pale. Going forward, counsel may want to be more circumspect when it comes to choosing his language. There is often a fine line between colorful language and outlandish hyperbole; when counsel crosses that line, aggressive advocacy begins to resemble shameless grandstanding. Accordingly, counsel should always err on the side of caution. Taflinger's "informal" request for sanctions for the fees incurred in responding to this motion is **DENIED**.

## B.     Bill of Costs

Rule 54(d)(1) directs that costs "should be allowed to the prevailing party," unless "a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1) (emphasis added). Specifically, costs are limited to the items set forth in 28 U.S.C. § 1920,

which include: (1) fees of the clerk and the marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *See* 28 U.S.C. § 1920.  As the Seventh Circuit has recognized, the strong presumption "in favor of awarding costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined – the court must award costs unless it states good reasons for denying them." *Weeks v. Samsung Heavy Indus. Co.*, Ltd., 126 F.3d 926, 945 (7th Cir. 1997).

Here, the Schools seek $3,900.67 in costs.  (Dkt. 207.)  Taflinger has not given the Court a reason to deviate from the general rule that costs are appropriate; nor has Taflinger cast doubt on the necessity of any of these costs.  Accordingly, the Schools' motion is **GRANTED** with respect to costs in the amount of $3,900.67.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court rules as follows on the pending motions: (1) Westfield's Motion for Summary Judgment (Dkt. 100) is **GRANTED**; (2) Defendant U.S. Swimming's Motion for Summary Judgment (Dkt. 103) is **GRANTED**; (3) Taflinger's Motion to Re-open Discovery (Dkt. 193) is **DENIED**; and (4) the Schools' Motion for Attorney's Fees and Costs (Dkt. 201) is **DENIED** with respect to attorney's fees and **GRANTED** with respect to costs in the amount of $3,900.67.

SO ORDERED:   04/25/2012

_____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

13

DISTRIBUTION:

B. Robert Allard
CORSIGLA MCMAHON AND ALLARD
rallard@cmalaw.net

James M. Curran
LAW OFFICE OF JAMES M. CURRAN
jmc@currantriallaw.com, jimcurrantriallaw@yahoo.com

Kristopher N. Kazmierczak
KATZ & KORIN P.C.
kkazmierczak@katzkorin.com, vellis@katzkorin.com

Jonathan Charles Little
LAW OFFICES OF JONATHAN LITTLE
jonlittlelaw@gmail.com, jonlittle2004@yahoo.com

Bernard Lowell Pylitt
KATZ & KORIN P.C.
bpylitt@katzkorin.com, vellis@katzkorin.com

Thomas E. Wheeler, II
FROST BROWN TODD LLC
twheeler@fbtlaw.com, kdickerson@fbtlaw.com